# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1564

_____

Arnold V. Fleck

*Plaintiff - Appellant*

v.

Joe Wetch, President of the State Bar Association of North Dakota, et al.

*Defendants - Appellees*

------------------------------

Pacific Legal Foundation

*Amicus on Behalf of Appellant*

State Bar of California; The Missouri Bar; State Bar of Alaska; State Bar of
Arizona; State Bar of Kentucky; State Bar of Michigan; State Bar of South
Dakota; State Bar of Wyoming

*Amici on Behalf of Appellees*

*Texas Legal Ethics Counsel*

*Amicus Curiae*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: June 13, 2019
Filed: August 30, 2019

_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

To practice law in North Dakota, every resident lawyer must maintain membership in and pay annual dues to the State Bar Association of North Dakota (SBAND). See N.D.C.C. §§ 27-11-22; 27-12-02, -04. When attorney Arnold Fleck learned that SBAND was using his compulsory dues to oppose a state ballot measure he supported, Fleck commenced this action against SBAND and various state officials in their official capacities, asserting First Amendment claims. The district court[1] granted summary judgment for the defendants. Fleck appealed; we affirmed. Fleck v. Wetch, 868 F.3d 562 (8th Cir. 2017). Almost one year later, the Supreme Court issued its decision in Janus v. American Federation of State, County, and Municipal Employees, 138 S. Ct. 2448 (2018). The Court then granted Fleck's petition for a writ of certiorari, summarily vacated our decision, and remanded "for further consideration in light of Janus." 139 S. Ct. 590 (2018). We reopened the case and directed the parties to submit supplemental briefs addressing the issues on remand. Having considered the supplemental briefs, the record on appeal, and the Supreme Court's decision in Janus, we again affirm the decision of the district court.

## I. Framing the Issues on Remand.

**A.** In Abood v. Detroit Board of Education, 431 U.S. 209 (1977), the Supreme Court held that public-sector unions may collect compulsory "agency fees" from non-

_____

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

members within the bargaining unit to fund activities germane to collective bargaining, but may not use those fees to fund non-germane political or ideological activities that a nonmember employee opposes. In Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292, 303 (1986), the Court held that the procedure a union adopts to implement this distinction must "be carefully tailored to minimize the infringement" of a nonmember's First Amendment rights. This includes, the Court declared, "an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." Id. at 310.

In Keller v. State Bar of California, 496 U.S. 1, 13-15 (1990), the Court held that an integrated bar such as SBAND can, consistent with the First Amendment, use a *member's* compulsory fees to fund activities germane to "regulating the legal profession and improving the quality of legal services," but not to fund "activities having political or ideological coloration which are not reasonably related to the advancement of such goals" that the member opposes (non-germane activities). Lacking an adequate record to address procedural alternatives in detail, the Court stated that "an integrated bar could certainly meet its Abood obligation by adopting the sort of procedures described in Hudson." Id. at 17.

In Janus, the Supreme Court overruled Abood and held that public-sector unions may not deduct agency fees or "any other payment to the union" from the wages of *nonmember* employees unless the employees waive their First Amendment rights by "clearly and affirmatively consent[ing] before any money is taken from them." 138 S. Ct. at 2486. On remand, Fleck argues that Janus "requires reversal of the district court decision" because Keller's theoretical underpinnings have been undercut by Janus and by Harris v. Quinn, 573 U.S. 616 (2014).

Like Keller, this case involves a mandatory bar association, not a public-sector union. The majority in Janus did not discuss Keller nor respond to the dissent's assertion that Keller was a "case[] involving compelled speech subsidies outside the labor sphere [that] today's decision does not question." 138 S. Ct. at 2498 (Kagan, J., dissenting). In Harris, the Court specifically stated that its holding should not be assumed to "call into question our decision[] in Keller." 573 U.S. at 655. Thus, analysis of the potential relevance of the Janus and Harris decisions on remand requires careful attention to the specific claims asserted by Fleck in this litigation. We must be mindful of the principle that, "if a precedent of this Court has direct application in a case [here, Keller], yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." Agostini v. Felton, 521 U.S. 203, 237 (1997) (quotation omitted); see Minn. Citizens Concerned for Life, Inc. v. Swanson, 692 F.3d 864, 879 (8th Cir. 2012) (en banc).

**B.** Fleck asserted three separate First Amendment claims in his February 2015 Complaint: First, that SBAND's procedures for collecting and spending mandatory member dues fail to protect members' rights not to subsidize non-germane expenditures to which they objected. Second, that those procedures violate his right to "affirmatively consent" before subsidizing non-germane expenditures. Third, that mandatory membership in SBAND as a condition of practicing law violates his First Amendment right to freedom of association and to avoid subsidizing speech with which he disagrees. The first claim was resolved by a November 2015 settlement in which SBAND revised its license fee statement. See Fleck, 868 F.3d at 653. Fleck does not argue on remand that Janus permits him to revive a claim that he settled. Thus, we limit this opinion to whether Janus requires further consideration of our decision affirming the grant of summary judgment on his second and third claims.

## II. The Mandatory Association Claim.

Fleck's brief on remand placed primary emphasis on his third claim -- that mandatory state bar association membership violates the First Amendment by compelling him both to pay dues to SBAND and to associate with an organization that engages in political or ideological activities. He argues that Janus requires further consideration of this claim because Keller did not address what the Supreme Court described as "a much broader freedom of association claim than was at issue in Lathrop," 490 U.S. at 17,[2] and in Janus the Court "made clear that courts must apply 'exacting scrutiny' -- or possibly even strict scrutiny -- to the question of whether the state's decision to force an attorney to join the state bar association violates the First Amendment freedom of association."

Assuming without deciding that Keller "left the door open" to pursue this freedom of association claim in the district court and in this court, Fleck *explicitly* chose not to do so. In his motion for summary judgment to the district court, Fleck conceded that his "claim challenging the constitutionality of conditioning the practice of law upon SBAND membership . . . is presently foreclosed by Keller," and therefore the district court "must deny his motion for summary judgment as it relates [to] this claim." Defendants in responding to Fleck's motion and the district court's order granting defendants' cross-motion for summary judgment relied in part on this concession. Likewise, Fleck's brief on appeal to this court conceded that his "alternative claim challenging the constitutionality of mandatory bar association membership is foreclosed by Keller and Lathrop," and therefore "this Court must

---

[2]The Court in Keller applied its prior decision in Lathrop v. Donohue, 367 U.S. 820, 843 (1961), where it held that the "compulsory payment of reasonable annual dues" to the integrated Wisconsin bar did not violate plaintiff's First Amendment "rights of association." The Court in Lathrop noted that it was presented "only with a question of compelled financial support of group activities, not with involuntary membership in any other aspect." Id. at 828.

affirm the lower court's judgment on this claim." He explained that he was presenting the argument "to preserve it for the proper forum." Relying on this concession, we stated that "we need not further address this issue" and devoted our opinion to an analysis of Fleck's opt-out claim. Fleck, 868 F.3d at 653.

Fleck's petition to the Supreme Court for a writ of certiorari misrepresented his position before our court. The petition stated that he "acknowledged [to the district court] that his challenge to mandatory bar membership was foreclosed by binding precedent." But it then falsely asserted that our court "affirmed the dismissal of Fleck's challenge to mandatory bar membership on the basis of" Keller and Lathrop and asked the Supreme Court to "reverse the Eighth Circuit's decision and overrule Keller and Lathrop." Then on remand, he argued the constitutionality of mandatory bar association membership to this court *for the first time*, on a district court summary judgment record that did not address this issue, an issue a majority of the Court treated as highly fact-intensive in Lathrop. See 367 U.S. at 827-48 and 851-64 (Harlan, J., concurring).

As a general rule, we will not consider arguments raised for the first time on appeal "as a basis for reversal." von Kerssenbrock-Praschma v. Saunders, 121 F.3d 373, 375 (8th Cir. 1997) (citation omitted). In addition to the "inherent injustice in allowing an appellant to raise an issue for the first time on appeal," a primary reason for this rule is that "the record on appeal generally would not contain the findings necessary to an evaluation of the validity of an appellant's arguments." Id. at 376 (citation omitted). However, we may invoke our "discretion to consider an issue for the first time on appeal where the proper resolution [of that issue] is beyond any doubt . . . or when the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case." Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 891 (8th Cir. 2009) (citation omitted). This is not an appropriate case to invoke that exception.

Fleck conceded his associational claim was governed by binding precedent before the district court and on appeal. Fleck was represented by public interest lawyers who advised this court they were preserving the issue to argue to the Supreme Court that Keller and Lathrop should be overruled. Perhaps more importantly, this is not a "purely legal" issue. Based on Fleck's concession, defendants did not place in the summary judgment record the types of detailed information discussed by the Supreme Court in Lathrop concerning the legislative decision to adopt an integrated bar in North Dakota, the extent to which this method of licensing and regulating the profession burdens associational rights of North Dakota lawyers, and whether, if exacting scrutiny is the governing standard, North Dakota can serve its "compelling state interests . . . through means [that are] significantly less restrictive of associational freedoms." Boy Scouts of Am. v. Dale, 530 U.S. 640, 680 (2000) (citation omitted).

It may well be, as Fleck now argues, that Keller and Lathrop did not consider, and therefore did not foreclose, his First Amendment associational claim. It may also be that Janus confirms that this issue would now be decided under a more rigorous exacting scrutiny standard than the Court may have applied in Keller and Lathrop. We decline to consider these issues because, whatever level of scrutiny is appropriate, the claim must still be decided on an evidentiary record. Based on prior Supreme Court precedent, we conclude the record is inadequate as the result of Fleck forfeiting the issue in the district court and on appeal. Accordingly, we decline to invoke our discretion to take up this claim for the first time on remand.

### III. The Opt-Out Procedure Claim.

Once a year, SBAND mails a fee statement which attorney members fill out and return with their annual dues payment. SBAND fills in the top half of the statement including the member's annual license fee (for example, at the time in question, $380 for a lawyer with more than five years of practice.) As revised by the

settlement that resolved Fleck's first claim in this lawsuit, the bottom half of the statement includes a column in which the lawyer may elect to pay additional fees to enroll in one or more practice group sections, to donate to the North Dakota Bar Foundation or the Pro Bono Fund, and to take a "Keller deduction." SBAND agreed to add the Keller-deduction line in response to this lawsuit. Next to this line, the statement explains:

> OPTIONAL: Keller deduction relating to nonchargeable activities. Members wanting to take this deduction may deduct $10.07 if paying $380; $8.99 if paying $350; and $7.90 if paying $325. (See Insert.)

Accompanying the fee statement is a two-page insert entitled Notice Concerning State Bar Dues Deduction and Mediation Process explaining how SBAND calculates non-chargeable activities and how members may object to these determinations. In addition, a new Keller Policy available on SBAND's member website provides an additional notice. See Fleck, 868 F.3d at 655.

In Knox v. SEIU, 567 U.S. 298, 322 (2012), the Supreme Court held that "when a public-sector union imposes a special assessment or dues increase, the union must provide a fresh Hudson notice and may not exact any funds from nonmembers without their affirmative consent." In Fleck, we held that the revised SBAND procedures complied with the *annual* procedures established in Hudson and cross-referenced in Keller and that "the opt-out issue debated by the Court in Knox is simply not implicated by SBAND's revised license fee Statement":

> Before submitting an annual license fee payment, each member calculates the amount owing on the revised Statement. If he selects the Keller deduction, he writes a check for the lower amount that excludes a payment for SBAND's non-germane expenditures. If he does not choose the Keller deduction, he "opts in" to subsidizing non-germane

-8-

expenses by the affirmative act of writing a check for the greater amount.

868 F.3d at 656-57.

On remand, Fleck argues that "SBAND's collection of money . . . for non-germane activities violates the First Amendment, just as the union fees in Janus did, because SBAND does not obtain attorneys' consent to pay in a manner that is (1) clear, (2) affirmative, and (3) prior to collecting of funds, as Janus requires." We disagree. Janus held that no fee or payment to the union "may be deducted from a nonmember's wages . . . unless the employee affirmatively consents to pay . . . . before any money is taken." 138 S. Ct. at 2486. In this case, SBAND collects dues from members who are licensed attorneys. The audience is sophisticated and trained to understand and appreciate legal communications. Though membership is mandatory, it still involves a relatively comfortable relationship in which the member is encouraged to raise issues or seek information from his or her organization.

SBAND's revised fee statement and procedures clearly do not force members to pay non-chargeable dues over their objection. Attorneys are not paid public sector wages, and SBAND does not automatically deduct annual dues from any source of member funds. It does not have an online system for collecting dues and fees and does not even accept credit card payments. Each member must determine how much he or she owes in annual dues and then write a check to SBAND to pay that amount. The member's right to pay or refuse to pay dues to subsidize non-chargeable expenses is clearly explained on the fee statement and accompanying instructions, *in advance of the member consenting to pay by delivering a check to SBAND*. Doing nothing may violate a member's obligations to pay dues, but it does not result in the member paying dues that he or she has not affirmatively consented to pay.

-9-

Nothing in the summary judgment record suggests that SBAND's revised fee statement is so confusing that it fails to give SBAND members adequate notice of their constitutional right to take the Keller deduction. Indeed, Fleck's stipulation that the revised fee procedures "resolve fully and completely" his first claim for relief is strong evidence to the contrary, as that claim included the allegation that SBAND was failing to provide "notice to members, including an adequate explanation of the basis for the dues and calculations of all non-chargeable activities." The best that can be said for Fleck's argument is that a busy or careless lawyer might fill out the fee statement and write a check to SBAND for the full annual dues without noticing the option to take the Keller deduction. The record contains no evidence this has ever happened or is likely to happen. Fleck asserts a facial, not an as-applied attack on the revised fee statement.

In a "union shop," every employee must be a union member. The Supreme Court's public-sector union cases -- Abood, Knox, Harris, and Janus -- have involved "agency shop" relationships, authorized by state law and/or the collective bargaining agreement, in which employees may be nonmembers; the issue was the manner in which and extent to which nonmembers could be compelled to pay agency fees to subsidize the union's non-germane activities. The Supreme Court has never decided whether a public-sector union shop would violate employees' First Amendment associational rights. If the Court upheld a mandatory membership requirement, the dues subsidy issue would be analogous to the issue in this case under Keller and Hudson. We have little doubt the Court would impose a requirement that the union adopt procedures "carefully tailored to minimize the infringement" of a dissenting member's First Amendment rights. Hudson, 475 U.S. at 303. But because of the practical differences when an organization deals with members and nonmembers, we do not assume that the "Hudson notice" requirements would be the same in every detail. Therefore, as Janus did not overrule Keller and did not question use of the Hudson procedures *when it is appropriate to do so*, we conclude after further

-10-

consideration that <u>Janus</u> does not alter our prior decision explaining why the district court did not err in granting summary judgment dismissing Fleck's second claim.

For the foregoing reasons, the judgment of the district court is affirmed.

_____